## BRUNELL v. UNITED STATES.

District Court, S. D. New York.
April 9, 1948.

M. H. Rosenhouse, of New York City (T. Bernard Eisenstein, of New York City, of counsel), for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City (Nathan Skolnik, of New York City, of counsel), for defendant.

RYAN, District Judge.

Defendant, United States of America, moves before answer under Rule 12(b), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, for an order and judgment dismissing the complaint on the grounds (1) that the court lacks jurisdiction of the subject-matter of the action, and (2) that the complaint fails to state a claim against the United States of America upon which any relief can be granted.

Plaintiff sues under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq.

Plaintiff, a professional entertainer and a citizen of the State of New York residing in this district, alleges that on October 16, 1945 she was lawfully touring in Saipan with a U.S.O. Camp Show, and that while being transported in an army jeep, operated and controlled by a member of the armed forces, the jeep through the negligence and carelessness of the operator ran off the road and struck a tree, as a result of which, and without any negligence on her part, she sustained serious bodily injuries. The complaint contains the following allegations:

"11. That on the 16th day of October, 1945, Saipan was not a foreign country.

"12. That prior to the 16th day of October 1945, Saipan was conquered by the United States Armed Forces and that on the 16th day of October 1945, and ever since, Saipan has been owned, occupied, managed, controlled and administered by the United States of America."

Plaintiff seeks judgment in the sum of $75,000, as compensation for her injuries and necessary expenses.

■ Section 941(b) and (c) of the Federal Tort Claims Act provides:

"(b) 'Employee of the Government' includes officers or employees of any Federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a Federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

" (c) 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty. * * *"

The alleged negligence of the operator (a member of the armed forces) of the jeep in which plaintiff claims she was riding at the time of the accident may be properly asserted as the basis of an action brought under this Act.

The question presented by this motion is whether plaintiff's claim arising as it does in Saipan, can be brought against the United States under the provisions of the Federal Tort Claims Act. More particularly, we are called upon to decide whether Saipan, at that time, was a foreign country within the meaning of § 943(k), 28 U.S.C.A.

This section provides:

"Claims exempted from operation of chapter

"The provisions of this chapter shall not apply to—

\* \* \* \* \* \*

"Any claim arising in a foreign country."

 We must assume as true, for the purposes of this motion, all the facts well-pleaded in the complaint. We cannot, however, accept as accurate the allegations contained in paragraphs 11 and 12, above-quoted, and particularly that portion of 11 which alleges that "Saipan was not a foreign country" and of 12 which alleges that "on the 16th day of October 1945, and ever since, Saipan has been owned \* \* \* by the United States of America." Whether or not Saipan is a foreign country and whether or not on and since October 16, 1945 it has been owned by the United States of America are allegations concerning purported facts, which under Rule 12(b), F.R.C.P. the court is not required to accept.

Saipan is an island located in the Marianas Group in the South Pacific. The facts upon which the status of this island is to be determined are not in dispute. The defendant, on this motion, submits a photostatic copy of a letter dated December 16, 1947, relating to the status of Saipan, addressed to the Hon. Tom C. Clark, Attorney General of the United States by the Legal Adviser of the Department of State. Plaintiff concedes the historical facts of this letter to be accurate, but disputes the conclusion reached in the final paragraph. The letter reads:

"\* \* \* \* \* \* \*

"The receipt is acknowledged of your letter of December 1, 1947 \* \* \* in which, in connection with a suit against the United States under the Federal Tort Claims Act, a statement was requested which would reflect the political status of Saipan on October 16, 1945.

"It is the view of the Department of State that the Island of Saipan on October 16, 1945 was an area under military occupation by forces of the United States following conquest from Japan, the power to which a mandate had been entrusted after World War I pursuant to Article 22 of the Covenant of the League of Nations.

"In further answer to your inquiry and to that made by the United States Attorney, no treaty of cession has been signed ceding Saipan to the United States, and no Federal legislation has been enacted incorporating Saipan into the United States. A Trusteeship Agreement with respect to the former Japanese mandated islands, including Saipan, between the United States as administering authority and the Security Council of the United Nations, came into force on July 18, 1947. The United States does not have sovereignty over Saipan by virtue of this Agreement. The Agreement does not provide for a termination date.

"Accordingly, it is concluded that Saipan has not been and is not a part of the United States, nor a territory or possession of the United States. \* \* \* "

Plaintiff does not argue, of course, that prior to December 7, 1941—the date of commencement of hostilities with Japan—Saipan, as a territory under mandate of Japan, was not a foreign country. We must determine, then, whether the status of Saipan, after occupation by the military forces of the United States changed from that of a foreign country to a territory of the United States.

It was held in United States v. Rice, 4 Wheat. 246, 247, 17 U.S. 246, 247, 4 L.Ed. 562, that territory of the United States, which by conquest and military occupation is in possession of a public enemy, is to be regarded as foreign territory within the meaning of the Revenue laws and that goods brought into such territory are not subject to United States duties. There is, however, a fundamental distinction to be made between military occupation, which by its nature is but temporary, and permanent acquisition.

 Beginning with Vattel, in the middle of the Eighteenth Century (Droit des Gens, liv.iii. §§ 197, 198), it has been recognized that sovereignty does not arise until the invading belligerent has completely ousted the enemy and has definitely ac-

quired the territory by conquest or by treaty of cession. Wheaton, International Law, 6th Ed., points to the line of demarcation existing between mere military occupation and conquest, and complete subjugation, writing (at pp. 780, 781):

"Conquest or complete subjugation implies the permanent subjection of the occupied country to the sovereign of the occupying forces, with the intention that this territory shall be annexed to the dominions of the new sovereign and shall henceforth be considered as a constituent portion thereof; that is, conquest depends on 'firm possession' together with the intention and the capacity to hold the territory so acquired.

"The rights of occupancy, then, cannot be co-extensive with those of sovereignty. They are due to the military exigencies of the invader, and consequently are only provisional. The local inhabitants do not owe the occupant even temporary allegiance; and the national character of the locality is not legally changed."

The status of foreign territory when occupied by the armed forces of the United States was defined in Fleming v. Page, 9 How. 603, 13 L.Ed. 276, it being held there that although such territory comes under the sovereignty of the United States and that foreign nations are bound to regard it as such, it does not in fact become a part of the United States. And, it was also held that goods imported from Mexican territory occupied by the United States were liable to duties, as coming from a foreign country. The opinion of the Court in Fleming v. Page, supra was quoted with approval in De Lima v. Bidwell, 1900, 182 U.S. 1, at 182, 21 S.Ct. 743, at page 747, 45 L.Ed. 1041: "In delivering the opinion of the court Mr. Chief Justice Taney observed: 'The United States, it is true, may extend its boundaries by conquest or treaty, and may demand the cession of territory as the condition of peace, in order to indemnify its citizens for the injuries they have suffered, or to reimburse the government for the expenses of the war. But this can be done only by the treaty-making power or the legislative authority, and is not a part of the power conferred upon the President by the declaration of war. * * * While it was occupied by our troops, they were in an enemy's country, and not in their own; the inhabitants were still foreigners and enemies, and owed to the United States nothing more than the submission and obedience, sometimes called temporary allegiance, which is due from a conquered enemy when he surrenders to a force which he is unable to resist.' "

And, the Court further said at page 194 of 182 U.S., at page 752 of 21 S.Ct.: "Possession is not alone sufficient as was held in Fleming v. Page; nor is a treaty ceding such territory sufficient without a surrender of possession."

In the De Lima case, supra, the Supreme Court adopted and approved the principles enunciated by Vattel in the Eighteenth Century. The status of conquered territory was again defined by the Supreme Court in Downes v. Bidwell, 1901, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088, the Court amplifying the ruling in the De Lima case, supra, and quoting from the opinion of Mr. Chief Justice Marshall in American Ins. Co. v. 356 Bales of Cotton, 1 Pet. 511, 7 L.Ed. 242, said: " 'The usage of the world is, if a nation be not entirely subdued, to consider the holding of conquered territory as a mere military occupation until its fate shall be determined at the treaty of peace. If it be ceded by the treaty the acquisition is confirmed, and the ceded territory becomes a part of the nation to which it is annexed, either on the terms stipulated in the treaty of cession or on such as its new master shall impose.' " Downes v. Bidwell, supra, 182 U.S. at page 337, 21 S.Ct. at page 806.

And, in a separate concurring opinion, Mr. Justice Gray stated: "So long as Congress has not incorporated the territory into the United States, neither military occupation nor cession by treaty makes the conquered territory domestic territory, in the sense of the revenue laws; but those laws concerning 'foreign countries' remain applicable to the conquered territory until changed by Congress. Such was the unanimous opinion of this court, as declared by Chief Justice Taney in Fleming v. Page * * *." Downes v. Bidwell, supra.

■ The fact that some twenty-one months after the date of the alleged accident—in July, 1947 the United States became the trustee of Saipan by designation of the United Nations does not change the status of Saipan of October 16, 1945; under the trusteeship, Saipan still remains a foreign country. The United States has only undertaken for an indefinite period to act as trustee of it on behalf and for the benefit of the United Nations.

The Supreme Court in Burnet v. Chicago Portrait Co., 285 U.S. 1, at page 5, 52 S.Ct. 275, at page 277, 76 L.Ed. 587 discussed the meaning of the term "foreign country": "The word 'country,' in the expression 'foreign country,' is ambiguous. It may be taken to mean foreign territory or a foreign government. In the sense of territory, it may embrace all the territory subject to a foreign sovereign power. When referring more particularly to a foreign government, it may describe a foreign state in the international sense, that is, one that has the status of an international person with the rights and responsibilities under international law of a member of the family of nations; or it may mean a foreign government which has authority over a particular area or subject-matter, although not an international person but only a component part, or a political subdivision, of the larger international unit. The term 'foreign country' is not a technical or artificial one, and the sense in which it is used in a statute must be determined by reference to the purpose of the particular legislation."

■ Congress by the term "foreign country" in the Federal Tort Claims Act, limited the operation of the Act to areas which were actually a component part or political subdivision of the United States. Although, on October 16, 1945, Saipan was in the possession and under the control of the United States by reason of military conquest and occupation, it cannot in any sense be deemed to have been either a component part or a political subdivision of this nation. Congress, by the passage of the Federal Tort Claims Act, surrendered sovereign immunity to suit only in so far as it has expressly so provided. Jurisdiction over such claims and suits is limited to the terms and language of the consent given and that consent cannot be enlarged by judicial interpolation. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L. Ed. 888; United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894.

Although we have approached consideration of the statute and the words "foreign country", "with an attitude somewhat like that of Justice Cardozo, who asserted two decades ago that 'The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced'" (Anderson v. John L. Hayes Construction Co., 243 N.Y. 140, 153 N.E. 28, 29); 47 Col.L.Rev. 727, we are unable to exclude the conquered Island of Saipan from that classification. The Federal Tort Claims Act provides that the rights of any claimant are to be determined by the law of the place of the wrong. 28 U.S.C.A. § 931(a). Congress apparently was willing that such claims be made against the United States in conformity with the law of any state, territory or possession of the United States, but it did not consent to expose the Government to claims predicated on the laws of a foreign country.

■ We reluctantly come to the conclusion that the Island of Saipan is a foreign country within the exception of the Federal Tort Claims Act. Although plaintiff's claim seems to be both just and meritorious, the court is without power to entertain her action or grant her relief. The claim of plaintiff for the serious injuries she allegedly sustained while performing work of importance to the morale of our armed forces, can be recognized only by special legislation of Congress. Properly presented to the appropriate Congressional Committee, plaintiff's claim will receive just and sympathetic consideration.

Motion granted; complaint dismissed.