Juanita **BURNA**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 7306.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 29, 1956.

Decided Jan. 7, 1957.

Louis Ellenson, Newport News, Va. (Taylor & Ellenson, Newport News, Va., on brief), for appellant.

John M. Hollis, Asst. U. S. Atty., Norfolk, Va. (L. S. Parson, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and THOMSEN, District Judge.

SOBELOFF, Circuit Judge.

This appeal is from the dismissal of a suit under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. The appellant's complaint alleged that on October 5, 1954, she was severely injured by a vehicle owned by the United States and negligently operated by its agent on the Island of Okinawa in the Ryukyu Islands. The ground for dismissal was that the Island of Okinawa is a foreign country, and that the F.T.C.A., Title 28, Section 2680(k), specifically excludes from its operation "any claim arising in a foreign country." The sole question on this appeal is whether Okinawa is a foreign country within the meaning of this statute.

By conquering Japan in World War II, the United States came into possession of Okinawa and the rest of the Ryukyu archipelago. In Article 3 of the Treaty of September 8, 1951, which became effective on the following April 22, Japan agreed to concur in any proposal of the United States to the United Nations to place the Ryukyu Islands under its trusteeship system. It was further agreed that "pending the making of such a proposal and affirmative action thereon, the United States will have the right to exercise any and all powers of administration, legislation and jurisdiction."

In his capacity of United States delegate to the Japanese Peace Conference, on September 5, 1951, Mr. John Foster Dulles declared: "Several of the Allied Powers urged that the treaty should require Japan to renounce its sovereignty over these islands in favor of United States sovereignty. Others suggested that these islands should be completely restored to Japan.

"In the face of this division of Allied opinion, the United States felt that the best formula would be to permit Japan to retain residual sovereignty. * * * "

The Record contains a memorandum, prepared by the Far Eastern Law Section of the Library of Congress in which it is set forth that: "As of September, 1955, there is no arrangement made between the United States and the United Nations regarding the trusteeship of the Ryukyu Islands. Okinawa, therefore, is under the provisional administration of the United States Government."

Terms like "provisional administration" and "residual sovereignty," invested with *ad hoc* meanings, may serve usefully to express certain ideas in particular contexts, but they are, after all, not the precise limits Congress prescribed for the application of the F.T.C.A. Such terms of special coinage are interesting to examine, and sometimes they may shed light on an inquiry; but we must not be deluded into substituting them for entirely different statutory words which have clear meaning and were apparently used in a common, non-technical sense.

We must conclude that while the Treaty conferred certain authority upon the United States over Okinawa, it by no means made the island a part of the United States, and it remains a foreign country in the sense of the F.T.C.A.

The pertinent decisional literature is not extensive, but what there is fortifies us in our conclusions. While the appellant is doubtless correct in drawing certain distinctions between this case and others in which recovery was disallowed, and though it is true that some of the reasons given for denying recovery in those cases are inapplicable to the present situation, the cases taken as a whole, do furnish guidance here.

In United States v. Spelar, 1949, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3, it was held that the Act had not given consent to suits for torts occurring on an air base in Newfoundland territory occupied by the United States under a long-term lease. Appellant maintains that the reasons assigned by the Court, namely, that it was "territory subject to the sovereignty of another nation" and that "liability would depend upon the laws of a foreign power," are inapplicable here, because ratification of the Treaty has transferred broad powers and a measure of sovereignty to the United States, and Congress can now, by fiat, at any time nullify all Japanese laws on this Island.

Even if we were to accept the appellant's premise that some of the reasons cited in Spelar are inapplicable here, this would not necessarily require us to conclude the converse in this case, that the F.T.C.A. does apply to Okinawa. Though the absence of any United States sovereignty was a sufficient answer in Spelar, the transfer temporarily of a measure of sovereignty here is not sufficient to dissolve Okinawa's status as a foreign country. The reasons assigned by the Supreme Court were pertinent and sufficient to dispose of the case then before it; they do not necessarily exhaust the concept that underlies the statute. The Court's reasons should be read as the bases, within the statute, for the decision in that case, and we do not

think that they were meant to be treated as comprehensive and exclusive, or to establish a rigid formula for all cases. The fact that in the Spelar case the Treaty had not been concluded is no indication that when the Treaty was later concluded Okinawa ceased to be a foreign country.

The Treaty cannot be considered as anything more than a transitional arrangement, and for our purpose it is not a conclusive test that under the Treaty attributes of sovereignty can be exercised for the time being by the United States. This may indeed be the arrangement effected in order to maintain public order until a final disposition of the islands shall have been made; it still does not provide the touchstone of our inquiry, which is whether or not Okinawa is a foreign country. That the United States could at any time set aside Japanese laws does not, as we see it, signify that Okinawa has lost its foreign character.[1]

A half century ago, following the Spanish War, by treaty with Spain, the Philippine Islands were ceded to this country. This was nevertheless held not to have extended the right of trial by jury to residents of the Islands, because in the absence of Congressional action these Islands were "deemed not to have been incorporated" into the United States. Dorr v. United States, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128. In that instance the United States was made absolute master of the territory by cession, and was not merely a caretaker for other nations, as in the present instance, pending creation of an international trusteeship. There is even less reason for thinking that Okinawa has been incorporated into the United States or that it has ceased to be foreign in the sense in which that word is used in the F.T.C.A.

In refusing to relinquish sovereign immunity from suit in foreign countries, the reasons suggested in Spelar may not be the only ones that influenced Congress. It is easy to think of other possible reasons, such as the absence of United States courts in such countries, with resulting problems of venue, and the difficulty of bringing defense witnesses from the scene of the alleged tort to places far removed; and there may have been a reluctance to extend the Act's benefits to foreign populations and to have issues of liability decided according to theories foreign to our system of law. The latter consideration was also alluded to in Spelar, 338 U.S. at page 221, 70 S.Ct. 10. Regardless of where such speculations might lead us, not they, but the Statute, must prescribe the rule.

The case of Cobb v. United States, 9 Cir., 191 F.2d 604, which, like Spelar, was decided before the Japanese Treaty also uses arguments which, as appellant points out, may not be fully applicable since the adoption of the Treaty; but we find nothing in the opinion which supports the appellant's position, which, for her to prevail, must be that Okinawa is not now a foreign country. The fact that before the Treaty Okinawa was held to be foreign, does not compel an inference that the Treaty reversed its status. We agree with the observations in Judge Pope's concurring opinion in the Cobb case.

We find persuasion in the language of Judge Yankwich, in Hichino Uyeno v. Acheson, D.C.W.D.Wash.N.D., 96 F. Supp. 510, 515. In interpreting a similar phrase, he said: "* * * it is obvious that the words 'foreign state' are not words of art. In using them, the Congress did not have in mind the fine distinctions as to sovereignty of occupied and unoccupied countries which authorities on international law may have formulated. They used the word in the sense of 'otherness.' When the Congress speaks of 'foreign state,' it means a country which is not the United States or its possessions or colony,—an alien

---

1. Even after the United States was made the United Nations trustee for Saipan, that island was held nevertheless a foreign country in the sense of the F.T.C.A. Brunell v. United States, D.C.S.D.N.Y., 77 F.Supp. 68.

country,—other than our own, bearing in mind that the average American, when he speaks of a 'foreigner' means an alien, non-American. * * * So here, the interpretation called for is that of common speech and not that derived from abstract speculation on sovereignty as affected by foreign military occupation."

The facts alleged present an appealing human problem, and if we were free to grant relief in such a case there would be every moral basis for doing so. However, the Supreme Court has repeatedly indicated "that suit may not be maintained against the United States in any case not clearly within the terms of the statute by which it consents to be sued." United States v. Michel, 282 U.S. 656, 659, 51 S.Ct. 284, 285, 75 L.Ed. 598; see also Eastern Transportation Co. v. United States, 272 U.S. 675, 686, 47 S. Ct. 289, 71 L.Ed. 472. This general principle is applicable to the Federal Tort Claims Act. The remedy lies with Congress, not the courts.

Affirmed.