Edward Peter CALLAS, an infant under the age of fourteen years by Helen Callas, his Guardian ad litem and Edward George Callas, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 15979.

United States District Court E. D. New York.

June 18, 1957.

Herman E. Hoberman, Brooklyn, N. Y., for plaintiffs.

Leonard P. Moore, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y., by Myron Friedman, Asst. U. S. Atty., Long Beach, N. Y., for defendant.

BYERS, District Judge.

This defendant's motion for summary judgment presents but one question, that is, was the Island of Kwajalein, in the Marshall Islands in the Pacific, on February 20, 1955, a foreign country within the exclusion of the Federal Tort Claims Act, Title 28 U.S.C. § 2680(k)?

The Section reads:

"The provisions of this chapter and section 1346(b) of this title shall not apply to * * *

"(k) Any claim arising in a foreign country."

The infant plaintiff is the son of the plaintiff, Edward George Callas, who on that day was in the military service of the United States, and stationed on the said island. The boy, then nine years old, was playing on the beach and was seriously injured by the explosion of "a round of ordnance" thought to have been washed up on the beach as the result of its not having detonated in the course of military operations directed at the island during World War II.

It will be seen that nearly ten years had elapsed between the date of the accident and the termination of hostilities.

For reasons to be stated, it will appear that the negligence attributed to the defendant cannot present a triable issue for disposition on the merits, in view of the limitations imposed by Congress upon the submission of the Government to suit under the Federal Tort Claims Act.

With reference to Okinawa, the subject has been adjudicated as to injuries sustained in October of 1954, in Burna v. U. S., 4 Cir., 240 F.2d 720, 721. Therein it is stated that as to the Ryukyu Archipelago, of which Okinawa is a part, by treaty between the United States and Japan, the latter agreed to "concur in any proposal of the United States to the United Nations to place the Ryukyu Islands under its trusteeship system."

Seemingly that subject is still in the formative stage, but the opinion continues to point out (quoting a State Department memo):

"As of September 1955, there is no arrangement between the United States and the United Nations regarding the trusteeship of the Ryukyu Islands. Okinawa, therefore, is under the provisional administration of the United States Government."

The court decided that even so, "there is even less reason [than in Dorr v. U. S., 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128, re the Philippines] for thinking that Okinawa has been incorporated into the United States or that it has ceased to be foreign in the sense in which the word is used in the F.T.C.A."

Cobb v. U. S., 9 Cir., 191 F.2d 604, dealt with a tort claim arising on Okinawa in October, 1948, and the decision was that Okinawa is a foreign country, even speaking as of 1948, within the language and intent of the applicable statute.

Brunell v. U. S., D.C., 77 F.Supp. 68, 70, dealt with a tort claim arising on October 16, 1945, on the Island of Saipan, in the Marianas Group in the Pacific. Advice from the State Department of December 16, 1947, was quoted as follows:

"It is the view of the Department of State that the Island of Saipan on October 16, 1945 was an area under military occupation by forces of the United States following conquest from Japan, the power to which a

mandate had been entrusted after World War I pursuant to Article 22 of the Covenant of the League of Nations."

The court (Judge Ryan) concluded that even military occupation and control of Saipan on the date of the plaintiff's injury did not change the essential character of the Island from being a foreign country within the statutory purpose here involved.

That case was decided in 1948 and there has been no change in the statute in the intervening years, in spite of the obvious hardship which may well be visited upon such a plaintiff as this boy.

When one reflects upon the lengths to which some courts and juries have gone to award damages in so-called attractive nuisance stateside cases, he cannot but wish that Congress had seen fit to add appropriate words to the F.T.C.A. to include a country whose affairs are being administered by the United States, so far as concerns American citizens there stationed, so that an injured national could at least have his day in court. The task obviously is for Congress, and lies beyond the province of the judiciary.

As to Kwajalein, the parties have stipulated that "sovereignty of the Island of Kwajalein in the Marshall Islands group, on February 20, 1955, was governed by a trusteeship agreement entered into on July 18, 1947, by the United States of America [61 Stat. 3301], which provides:

> " 'The Territory of the Pacific Islands, consisting of the islands formerly held by Japan under mandate in accordance with Article 22 of the Covenant of the League of Nations, is hereby designated as a strategic area and placed under the trusteeship system established in the Charter of the United Nations. The Territory of the Pacific Islands is hereinafter referred to as the trust territory.

\*    \*    \*    \*    \*    \*

" 'The United States of America

is designated as the administering authority of the trust territory.' "

Reference to a commentary upon the Charter of the United Nations .by Goodrich and Hambro (Revised Edition 1949) will tend to explain the language quoted from the stipulation touching the nature and incidents of the trustee relationship. See particularly pages 424, 429, 432, 434 and 451 et seq. where Article 82 of the Charter and the designation of strategic areas is discussed.

This court has been unable to discover in the discussion of the provisions of the Charter contained in the work to which reference has been made, any indication that territory held under trusteeship loses its character as that of a foreign country, for the purposes of carrying into effect the intent of the statue in rendering the United States Government amenable to tort claims.

For reasons which must be apparent, the court is reluctantly brought to the conclusion that the defendant's motion must be granted.

Settle order.