Edward Peter **CALLAS**, an infant under the age of fourteen years, by Helen Callas, his Guardian ad Litem, and Edward George Callas, Plaintiffs-Appellants,

v.

**UNITED STATES of America,** Defendant-Appellee.

No. 163, Docket 24854.

United States Court of Appeals Second Circuit.

Argued Feb. 10, 1958.

Decided April 1, 1958.

Lumbard, Circuit Judge, dissented.

Herman E. Hoberman, Brooklyn, N. Y. (Bernard Meyerson, Brooklyn, N. Y., of counsel), for plaintiffs-appellants.

Cornelius W. Wickersham, Jr., U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendant-appellee.

Before HINCKS and LUMBARD, Circuit Judges, and GALSTON, District Judge.

GALSTON, District Judge.

The question involved on this appeal relates to a construction of the Federal Tort Claims Act. 28 U.S.C.A. § 2671 et seq. The facts are not in dispute.

It appears from the complaint that the action is brought pursuant to the Federal Tort Claims Act. It alleges that on February 20, 1955, the infant Edward Peter Callas was lawfully playing on the beach at Kwajalein in the Marshall Islands, and he was injured by the explosion of a round of ordnance. The complaint alleges that this explosion was brought about by the carelessness of the United States of America. The plaintiffs are residents of the Borough of Brooklyn.

The answer denies negligence, and for a separate and complete defense alleges that the injuries were sustained as a result of the boy's own failure to exercise due care.

But we do not have to consider the merits. The sole question for decision is jurisdiction.

From the answer it appears that following the attack on Pearl Harbor, our Government declared war on the Japanese Government and conducted a military campaign in the South Pacific on various islands, including the Island of Kwajalein. That island, at the beginning of the campaign, was occupied by enemy troops. Following a successful termination of the attack on the island, the United States Military Forces occupied the island. The answer alleges that claims brought as a direct result of the Military and Navel efforts of the United States Government during the conduct of a war are specifically excluded under the Federal Tort Claims.

It cannot be contended that the Island of Kwajalein is a part of the territory of the United States. The Federal Tort Claims Act, Title 28 U.S.C. § 2680(k), excludes any claim arising in a foreign country.

As to Kwajalein, on February 20, 1955, when the plaintiff's injury occurred, the United States stood not as a sovereign but as a trustee under the United Nations.

A stipulation entered into between the parties to this action on May 20, 1957 recites that the sovereignty of the Island of Kwajalein, in the Marshall Islands group, was governed by a trusteeship agreement entered into on July 18, 1947 by the United States of America, which reads as follows:

"The Territory of the Pacific Islands, consisting of the islands formerly held by Japan under mandate in accordance with Article 22 of the Covenant of the League of Nations, is hereby designated as a strategic area and placed under the trusteeship system established in the Charter of the United Nations. The Territory of the Pacific Islands is hereinafter referred to as the trust territory.

"The United States of America is designated as the administering authority of the trust territory."

■ Despite the powers undertaken by the United States pursuant to the trust agreement, for purposes of the Federal Tort Claims Act, 28 U.S.C.A. § 2680(k), it cannot follow that Kwajalein became part of the United States. It remained a foreign country. In United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 11, 94 L.Ed. 3, it was said that "the coverage of the Federal Tort Claims Act was geared to the sovereignty of the United States." And the reason for this, as Spelar points out, was because under the Act the *lex delicti* was applicable and consequently, if "foreign countries" were to be included, it would lead "to a good deal of difficulty." Although the nature of this "difficulty," which was recognized in the legislative history of the Act, was not particularized we think it reasonable to infer that Congress foresaw that a United States court might find it difficult to ascertain and apply the local law in regions not under the sovereignty of the United States—especially in regions where the local law had not crystallized through established legislative or judicial definition or where its content was subject to change by administrative authority. In United States v. Spelar an American air base in Newfoundland was held to be a foreign country for purposes of the Federal Tort Claims Act.

The question presented on this appeal as to what is a foreign territory under the Federal Tort Claims Act, is thus not a new one. Indeed the question was well discussed by Judge Ryan in 1948 in Brunell v. United States, D.C.S.D.N.Y., 77 F.Supp. 68. That case involved the status of Saipan, under the act in question. Judge Ryan made a careful review of the authorities and concluded that Saipan was a foreign country.

■ Whatever administration is exercised by the United States Government is solely and wholly in the capacity of a trustee designated by the United Nations. Whether the United Nations may be responsible for the acts of its trustee is not before us. Nor, indeed, is the United States being sued as a trustee. On the contrary, it is sued in its status as a sovereign—i.e., a sovereign of its own territorial components, i.e., the forty-eight States of the Union and the territories concerning which the United States has the power to enact laws. It makes no laws as a sovereign for the Island of Kwajalein. From a letter attached to the affidavit of counsel for the plaintiffs which he received from the Director of the United States Department of the Interior, it appears

"that any law of negligence which may be in force on Kwajalein is contained in the local common law or the British common law as it existed before July 4, 1776."

Certainly such is not the law of the United States, for there is no general common law within the federal jurisdiction. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ It must be insisted too that a sovereign can be sued only with its consent.

That rule was set forth by Chief Justice Jay in Chisholm, Executor v. State of Georgia, 1793, 2 Dall. 419, 1 L.Ed. 440; see also Cohens v. Com. of Virginia, 1821, 6 Wheat. 264, 5 L.Ed. 257, in which Chief Justice Marshall asserted:

"The universally received opinion is that no suit can be commenced or prosecuted against the United States; * * *."

Later, in U. S. v. Clarke, 1834, 8 Pet. 436, 8 L.Ed. 1001, Chief Justice Marshall said that the United States is

"not suable of common right, the party who institutes such suit must bring his case within the authority of some act of Congress, or the court cannot exercise juisdiction over it."

That being so, and the consent in this case being wholly absent, the judgment of the District Court is affirmed.

HINCKS, Circuit Judge (concurring).

I fully concur in Judge GALSTON's opinion but also place reliance on additional considerations. As was recognized in Cobb v. United States, 9 Cir., 191 F.2d 604, whether the Pacific Islands are a "foreign country" within the meaning of the Federal Tort Claims Act is a question of considerable difficulty. But whether the problem is reached by the common-sense approach advocated by Judge Pope in his concurring opinion in the Cobb case (which strongly appeals to me) or by the more legalistic approach of the majority opinion, the result here is the same. For if Okinawa was properly classified as a "foreign country" notwithstanding the unlimited power of the United States which had occupied and thereafter (until the date of the Cobb decision) maintained absolute control of the island by force of arms, *a fortiori* is Kwajalein a foreign country. For the comparable power which the United States had acquired over Kwajalein was voluntarily translated into a fiduciary responsibility to the United Nations which carried specified accountability to its Security Council through an express trust agreement, 61 Stat. 3301, approved by the Joint Resolution of Congress of July 18, 1947, c. 271, 61 Stat. 397, Historical Note to § 1435 of Title 48 U.S.C.A.

By the terms of this trust agreement the United States became the "administering authority of the trust territory," which included Kwajalein, Article 2, and as such was to have "full powers of administration, legislation, and jurisdiction over the territory subject to [see Article 6] the provisions of this agreement, and may apply to the trust territory * * * such of the law of the United States as it may deem appropriate to local conditions and requirements." Article 3. However, Article 6 provided that the administering authority "shall give due recognition to the customs of the inhabitants in providing a system of law for the territory * * *." Article 11 provided that "the administering authority shall take the necessary steps to provide the status of citizenship of the trust territory for the inhabitants of the trust territory." And by Article 13 the United States agreed that subject only to security restrictions, Articles 87 and 88 of the United Nations Charter (59 Stat. 1050–1) should be applicable under which it was provided that the administering authority (the United States) would annually submit to the Security Council, under its direction, annual reports on the "political, economic, social, and educational advancement of the inhabitants of the trust territory."

In view of the foregoing outline of the powers and responsibilities of an administering authority of the mandated islands, it seems clear that as to Kwajalein sovereignty did not devolve upon the United States. The limited functions and the supervised responsibilities which it assumed under its trust agreement were fundamentally incompatible with sovereign status.

"In spite of the unsolved question of exactly where sovereignty over mandated territories and over trust territories rests, there is general agreement with respect to certain aspects of the question. In the first

place, there seems to be general concurrence with respect to the present trust territories, as there was with respect to mandated territories, that wherever sovereignty does rest it is not with the administering power. This view has been reenforced by statements of the United States, the United Kingdom and Australia as administering authorities of trust territories. Each of these has stated on separate occasions that it does not regard its administration of the trust territory as implying any claim of sovereignty." Francis B. Sayre, "Legal Problems Arising From the United Nations Trusteeship System," 42 Amer.J.Int'l Law 269, 271.

The same considerations go far to persuade me that within the meaning of the Federal Tort Claims Act, even if applicability of that Act depends on factors other than United States sovereignty over the place of the delict, Kwajalein is a foreign country. Other considerations add persuasive corroboration to that conclusion. In its 8th Annual Report to the Security Council pursuant to Article 88 of the United Nations Charter, the United States declared that the inhabitants of the trust territory of the Pacific Islands were citizens thereof and might acquire United States citizenship in the same manner as other immigrants to the United States. By the President's Proclamation, No. 2980, of June 30, 1952, 17 F.R. 6019, July 4, 1952, published beneath 8 U.S.C.A. § 1151, under § 201(b) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1151(b), "Pacific Islands (trust territory, United States administered)" was assigned an immigration quota. This assignment was in conformity with the definition of § 101 of said Act, 8 U.S.C.A. § 1101, that " * * * territories under mandate or trusteeship shall be regarded as separate foreign states." Cf. Hichino Uyeno v. Acheson, D.C., 96 F.Supp. 510, 515. That natives of Kwajalein are thus classified with na-

tives concededly "foreign" and treated as aliens for purposes of our immigration laws, is a factor which strongly suggests that that island comes within the purview of a "foreign country" as that term was used in the Tort Claims Act. Moreover, the distant location of the island, its customs and the ethnic strain and language of its natives, are further factors which, I think, in the absence of cession or de jure annexation[1] tend to bring it within the ordinary American concept of a "foreign country."

I find no precedent whatever for reversing the decision below. On the other hand, in addition to the cases we have cited Burna v. United States, 4 Cir., 240 F.2d 720, lends powerful support to Judge Byers' thoughtful opinion below. I agree with the rationale of the opinion in that case. That the administration of Kwajalein by the United States was under international trusteeship is a fact which does not remove this case from the reach of the Burna opinion.

LUMBARD, Circuit Judge (dissenting).

The sole issue before this Court is whether Kwajalein is a "foreign country" within the meaning of the Federal Tort Claims Act, 28 U.S.C.A. § 2680(k). If it is not then this suit may be brought for injuries suffered by Edward Peter Callas, the infant son of a navel officer stationed on Kwajalein, when a round of ammunition he had picked up on the beach on February 20, 1955 exploded in his hand.

It is generally agreed that "foreign country" as used in the Federal Tort Claims Act is not a term of art and that its construction is dependent on the intent of Congress in excluding claims arising in foreign countries from the remedial provisions of the Act. See e. g. Burna v. United States, 4 Cir., 1957, 240 F.2d 720. Although the bases for the exclusion are not wholly clear, some have

1. Cf. Downes v. Bidwell, 182 U.S. 244, 346, 21 S.Ct. 770, 45 L.Ed. 1088.

been suggested. The Supreme Court in United States v. Spelar, 1949, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3 suggested that Congress was reluctant to predicate governmental liability on whatever the foreign tort law might happen to be. It has also been noted that the absence of district courts outside the United States would cause difficulties and expense in litigating claims in a forum far removed from the scene of a tort. Burna v. United States, supra, 240 F.2d at page 722. Courts have also ascribed a Congressional intent to preclude claims arising outside the United States and possessions where it is sovereign or in areas commonly understood and thought of as alien and foreign. See United States v. Spelar, supra; concurring opinion of Judge Pope in Cobb v. United States, 9 Cir., 1951, 191 F.2d 604, certiorari denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683.

In the international law sense, Kwajalein and related islands hold a unique position. A coral atoll and site of a United States naval station, Kwajalein is part of the Marshall Islands, this island group being one of the six districts of the Trust Territory of the Pacific Islands.[1] The territory is controlled by the United States by virtue of a Trusteeship Agreement with the United Nations, allowing in practical effect the exercise of full sovereign power by the United States although a residual sovereignty remains in the territory, divisions thereof, or the United Nations. See 1 Oppenheim, International Law 236 (8th Ed. 1955) for the latter view. In common with all trust territories, termination of the trust requires the consent of the administering authority as well as the consent of the United Nations. Moreover, this territory is the only area designated as a strategic trust, a designation which results in the United States being responsible to the Security Council rather that the General Assembly for administration of the trust, permits

preferential treatment of the United States in economic and commercial matters, and allows this country unilaterally to declare all or any part of the islands a closed area within which the United States may determine the extent to which trustee functions shall be exercised and from which it may bar anyone, including the United Nations.

The area is administered from a headquarters on Guam, a territory of the United States, and for the most part through the Department of the Interior. A system of courts has been established, applying local law and law which this country has introduced through codes, orders, and Congressional legislation. The local law apparently pertains primarily to property rights and criminal acts, and personal injury law, at least to the extent that United States citizens are involved, apparently would be based upon an incorporation of United States concepts in the absence of developed indigenous law. This is apparently what the Director of the Office of Territories of the Department of the Interior had in mind in his letter, referred to by Judge GALSTON, when he stated that the law of the trust territory included "* * * the common law of England and all statutes of Parliament in and thereof in force and effect on July 3, 1776, as interpreted by American courts."

The Charter of the United Nations and the Trusteeship Agreement impose binding legal obligations upon this country to promote self-government and other enumerated objectives. It is clear, however, that political development in the territory is elementary and that it will be a considerable time before the trust obligations are fulfilled and the trust terminated. Although the purpose of the trust is to prepare for independence, the furtherance of that purpose will require administration by the United States for an indefinite period in the future.

---

1. See generally, Report of the Special Subcommittee on Territorial and Insular Affairs of the Committee on Interior and Insular Affairs, Trust Territory of the Pacific Islands, 83d Cong., 2d Sess. (1955).

## 844

One other factor should be noted. By the venue provisions of the Act, 28 U.S.C.A. § 1402(b), civil actions on a tort claim against the United States "* * * may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Since there is no district court in the territory where an action may be brought, see 28 U.S. C.A. § 1346(b), the practical effect is to restrict suits against the government for claims arising in the trust territory to those prosecuted by residents of the United States.

Pulling these threads together, it is apparent that the United States acts as sovereign in the area although theoretically sovereignty lies elsewhere, that the administration is closely tied in with the administration of overseas territories and possessions, which are certainly not "foreign countries,"[2] that insofar as we are presently advised the law to be applied is general tort concepts as developed by United States courts and introduced into the territory because of United States control, and that as a practical matter actions are restricted to those by United States residents who, it is quite apparent, would ordinarily be in the islands only because of this country's interest in the trust territory. I do not think Congress intended that United States residents injured through the negligence of the United States in an area so controlled and administered by the United States and whose claims are based on general United States tort law should be remitted to the legislative machinery of private bills. In my opinion, Kwajalein is not now a "foreign country" as Congress used the term in the

Federal Tort Claims Act and was not on February 20, 1955.

I would reverse the order of the District Court and remand for further proceedings.

---

2. The people of our territories and possessions are citizens of this country, except for American Samoa and Swains Island, whose people are nationals. 8 U.S. C.A. §§ 1101(a) (29), 1101(a) (38), 1408. The Canal Zone occupies a special status which is in some respects analogous to that of the trust territory although it is permanently and more closely tied to the United States. Its people are not citizens or nationals, 8 U.S.C.A. § 1403, and although this country has full rights of use, occupation and control, it does not "own" the area. See 1 Oppenheim, International Law 458 (8th Ed. 1955). It is clear, however, that Congress intended the Federal Tort Claims Act to apply since it expressly extended jurisdiction to try such actions to the Canal Zone. 28 U.S.C.A. § 1346(b).