(COMMON LAW.)

## The UNITED STATES v. RICE.

By the conquest and military occupation of a portion of the territory of the United States by a public enemy, that portion is to be deemed a foreign country, so far as respects our revenue laws.

Goods imported into it, are not imported into the United States; and are subject to such duties only as the conqueror may impose.

The subsequent evacuation of the conquered territory by the enemy, and resumption of authority by the United States, cannot change the character of past transactions. The *jus postliminii* does not apply to the case; and goods previously imported do not become liable to pay duties to the United States, by the resumption of their sovereignty over the conquered territory.

1819.

U. States
v.
Rice.

ERROR to the Circuit Court of Massachusetts.

This was an action of debt, brought by the United States against the defendant, upon a bond for the penal sum of 15,000 dollars, dated the 17th of April, 1815, with the following condition: The condition of this obligation is such, that if the above bounden Henry, Rufus, and David, or either of them, or either of their heirs, executors, or administrators, shall and do, on or before the 17th day of October next, well and truly pay, or cause to be paid, unto the collector of the customs for the district of Penobscot, for the time being, the sum of 7,500 dollars, or the amount of the duties to be ascertained as due and arising on certain goods, wares, and merchandises, entered by the above bounden Henry Rice, as imported into Castine, during its occupation by the British troops, as per entry dated this date, then the above obligation to be void, otherwise to remain in full force and virtue.

Oyer of the condition being had, the defendant pleaded as follows: That before the time of the making of the supposed writing obligatory, to wit, on the 18th of June, in the year of our Lord 1812, war was declared by the Congress of the said United States, to exist between the united kingdom of Great Britain and Ireland, and the dependencies thereof, and the said United States and their territo-

ries, and war and open hostilities existed, and were carried on between the said United States and the said united kingdom of Great Britain and Ireland, and the dependencies thereof, from the said 18th of June, until the 17th of February, in the year of our Lord 1815, on which said last-mentioned day, a treaty of peace and amity between the said United States and the king of the said united kingdom, was accepted, ratified, and confirmed. And the said Henry farther says, that during the continuance of such war and hostilities as aforesaid, and before the making of the said supposed writing obligatory, to wit, on the 1st of September, in the year of our Lord 1814, the said king of the said united kingdom, in prosecution of said war against the said United States, did, with a naval and military force, and in a hostile manner, attack, subdue, capture, and take possession of the town and harbour of Castine, situated in the District of Maine, and continued to hold the exclusive and undisturbed possession of the same by a naval and military force, and in a hostile manner, and secured his said possession by muniments and military works, and had and exercised the exclusive control and government thereof, from the day last aforesaid, continually, until the said ratification of the treaty aforesaid. And immediately after the capture of said town and harbour, and before the importation of the goods and merchandises in the condition of said writing mentioned, the said king of the said united kingdom caused a custom house, or excise office, to be established at said Castine, and appointed a collector of the customs there, who thereupon entered

upon the discharge of the duties of his said office, and so continued to exercise the powers and discharge the duties of said office during all the time that the said town and harbour were so possessed as aforesaid, by the military and naval forces of the said king. And the said Henry further says, that afterwards, and while the said town and harbour were so held and possessed by the military and naval forces aforesaid, and were under the control and government of the said king, to wit, on the 1st of January, in the year of our Lord 1815, the goods and merchandises in the condition of said supposed writing obligatory mentioned, were purchased by Thomas Adams, Samuel Upton, and Greenleaf Porter, who were then and there merchants, resident and domiciled in said Castine, and there trading under the name and firm of Upton & Adams, having been citizens of said United States, resident in Castine, and there trading under said firm, before and at the time of said occupation, and still continuing to reside and trade in said Castine, and said goods were imported into the said town of Castine, by them the said Thomas, Samuel, and Greenleaf, and were by them duly entered in the custom house, or excise office, so established as aforesaid in said Castine, and the duties thereon were paid to said collector, so appointed as last aforesaid. And the said Henry further says, that at the time of the purchase and importation aforesaid, and during all the time that the said town and harbour were so held and possessed, as aforesaid, the said Thomas, Samuel, and Greenleaf, were inhabitants of the said town of Castine, and domiciled, and carrying on

1819.

U. States
v.
Rice.

commerce in said town, under the protection, govern-ment, and authority of the said king. And the said Henry further avers, that after the said goods and merchandises were so imported as aforesaid, after the entry thereof with the collector of the district of Pe-nobscot, as hereinafter mentioned, and the making and executing of the said supposed writing obliga-tory, to wit, on the 27th of April, in the year of our Lord 1815, in pursuance of the said treaty so made and ratified as aforesaid, the said town of Castine was evacuated by the troops and forces of said king, and possession thereof was taken by the said United States. And he further avers, that after the ratifica-tion of the treaty aforesaid, and after hostilities had ceased between the said United States and the said united kingdom and its dependencies, to wit, on the 15th day of April, in the year of our Lord, 1815, at Castine, to wit, at said Boston, the said Thomas, Sa-muel, and Greenleaf, for a valuable consideration, then and there paid to them by the said Henry, bar-gained, sold, and delivered to him, the said Henry, the goods and merchandises aforesaid, in the condi-tion of said supposed writing obligatory mentioned, the same being then in said Castine. And he further avers, that after the making and ratification of the treaty aforesaid, and after the bargain, sale, and deli-very aforesaid, to wit, on the 17th of April, in the year last aforesaid, at Castine, to wit, at said Boston, Josiah Hook, then and ever since collector of the customs of the said United States for the district of Penobscot, in which said district the said town of Castine is contained, acting under colour of the au-

thority of the said United States, and of his said office of collector, demanded and required of the said Henry, to enter the said goods and merchandises with him at his office in said Castine, and to pay, or to secure to the said United States, the same duties thereon, as though they had been imported into the said United States, from a foreign port or place, on the said last-mentioned day, in a ship or vessel not of the United States, and then and there threatened to seize and detain said goods and merchandises, and thereby to deprive the said Henry of all use and benefit thereof, unless he would immediately pay or secure to the United States such duties thereon as aforesaid. Whereupon, to prevent the seizure and detention of said goods and merchandises by said collector, and the losses and damages that would have ensued thereon, and that he, the said Henry, might, without any lawful interruption, or molestation by said Collector, retain and dispose of said goods and merchandises, for his use and benefit, he, the said Henry, then and there entered the said goods and merchandises with the said collector, in the said custom house at Castine, and in pursuance of the demand and requirement aforesaid, of said collector, sealed and delivered the said supposed writing obligatory, with said condition annexed, to said collector. And the said Henry avers, that the goods and merchandises mentioned in the said condition are the same which were imported into the said port and town of Castine, while the said port and town were in the possession, and under the control and government of the said king, and which were

entered at the said custom house there, and not other or different. And that the same goods and merchandises, at the time of the importation aforesaid, and thence continually, until the sale and delivery thereof, in manner aforesaid, to the said Henry, were in the possession, and subject to the control and disposal of the said Thomas, Samuel, and Greenleaf, and from the time of the sale and delivery aforesaid, until and at the time of making and executing the said supposed writing obligatory, were in the possession, and subject to the control and disposal of the said Henry, at Castine, to wit, at said Boston. By means whereof the said goods, wares, and merchandises, were not, at the time of entering the same with the said Hook, or at any time before or since, goods, wares, or merchandises, brought into the said United States, from any foreign port or place, nor upon which any sum or sums of money whatsoever, were then and there due and arising, or payable to the said United States for duties, and this he is ready to verify. Wherefore he prays judgment," &c.

There was a second plea, not varying materially from the first.

To these pleas the Attorney for the United States demurred generally, and the defendant joined in demurrer.

Judgment was rendered for the defendant in the Circuit Court, and the cause was brought by writ of error to this Court.

*Feb. 19th.*      The cause was argued by the *Attorney General*,

for the United States, and by Mr. *Webster,* for the defendant."

Mr. Justice Story delivered the opinion of the Court.

The single question arising on the pleadings in this case is, whether goods imported into Castine during its occupation by the enemy are liable to the duties imposed by the revenue laws upon goods imported into the United States. It appears, by the pleadings, that on the first day of September, 1814, Castine was captured by the enemy, and remained in his exclusive possession, under the command and control of his military and naval forces, until after the ratification of the treaty of peace in February, 1815. During this period the British government exercised all civil and military authority over the place ; and established a custom-house, and admitted goods to be imported, according to regulations prescribed by itself, and, among others, admitted the

---

*a* He cited *Grotius, De J. B. ac. P. l. 2. c.* , *s. 5, & seq. Ib. l. 3. c. 6. s. 4. Ib. l. 3. c. 9. s. 9.* 14. *Puffendorf,* by *Barbeyrac, l. 7. c. 7. s. 5. Ib. l. 8. c. 11. s.* 8. *Bynkershoek, Q. J. Pub. l. 1. c. 6.* 16. *Duponceau's Transl.* 46. 124. *Voet ad Pandect., l. 39. tit. 4. no. 7. De Vectigalibus. Ib. l. 19. tit. 2. no.* 28. *Ib. l. 49. tit. 15. no.* 1. United States v. Hayward, 2 *Gallis.* 501. The Fama, *Rob.* 106. The Foltina, *Dodson,* 450. 30 Hogsheads of Sugar, Bentzon, Claimant, 9 *Cranch,* 191. *Reeves' Law of Ship.* 98. *& seq.* United States v. Vowell, 5 *Cranch,* 368. United States v. Arnold, 1 *Gallis.* 348. S. C. 9 *Cranch,* 106. Empson v. Bathurst, *Winch. Rep.* 20. 50. *Winch. Entries,* 334. cited *Poph.* 176. S. C. *Hutton,* 52. *Com. Dig. Officer, H.*

<div align="right">1819.

U. States
v.
Rice.
Feb. 22d.</div>

goods upon which duties are now demanded. These goods remained at Castine until after it was evacuated by the enemy; and, upon the re-establishment of the American government, the collector of the customs, claiming a right to American duties on the goods, took the bond in question from the defendant, for the security of them.

Under these circumstances, we are all of opinion, that the claim for duties cannot be sustained. By the conquest and military occupation of Castine, the enemy acquired that firm possession which enabled him to exercise the fullest rights of sovereignty over that place. The sovereignty of the United States over the territory was, of course, suspended, and the laws of the United States could no longer be rightfully enforced there, or be obligatory upon the inhabitants who remained and submitted to the conquerors. By the surrender the inhabitants passed under a temporary allegiance to the British government, and were bound by such laws, and such only, as it chose to recognise and impose. From the nature of the case, no other laws could be obligatory upon them, for where there is no protection or allegiance or sovereignty, there can be no claim to obedience. Castine was, therefore, during this period, so far as respected our revenue laws, to be deemed a foreign port; and goods imported into it by the, inhabitants, were subject to such duties only as the British government chose to require. Such goods were in no correct sense imported into the United States. The subsequent evacuation by the enemy, and resumption of authority by the United States,

did not, and could not, change the character of the previous transactions. The doctrines respecting the *jus postliminii* are wholly inapplicable to the case. The goods were liable to American duties, when imported, or not at all. That they are so liable at the time of importation is clear from what has been already stated; and when, upon the return of peace, the jurisdiction of the United States was re-assumed, they were in the same predicament as they would have been if Castine had been a foreign territory ceded by treaty to the United States, and the goods had been previously imported there. In the latter case, there would be no pretence to say that American duties could be demanded; and, upon principles of public or municipal law, the cases are not distinguishable. The authorities cited at the bar would, if there were any doubt, be decisive of the question. But we think it too clear to require any aid from authority.

</div>

Judgment affirmed, with costs.