## WENDELL *vs.* CRANDALL.

A remainder in fee limited by will to the eldest son of the first taker to whom an intermediate life estate is given, is contingent until the birth of such son; but on the happening of that event, before the termination of the life estate it becomes a vested estate in remainder.

And where an estate tail in remainder was so limited, and became vested by the birth of a son prior to the act of 1786, abolishing entails; *held*, that by the operation of that act, the estate tail in remainder was converted into a fee simple in remainder, which, on the death of the remainderman without issue in 1809, and before the termination of the intermediate life estate, descended to his father as his heir at law.

One who has a vested remainder in fee simple, expectant on the determination of a present freehold estate, has such a seisin in law, where the estate was acquired by purchase, as will constitute him a *stirps* or stock of descent.

On error from the supreme court, where the action was ejectment, and the verdict and judgment were in favor of the defendant. For a full statement of the case, together with the arguments of the counsel and the opinion of the supreme court, see the report of the case in that court, 2 *Denio,* 9.

*S. Stevens*, for the plaintiff in error.

*D. Buel, Jr. & J. Pierson*, for the defendant in error.

BRONSON, J.   This case, and the case of *Van Rensselaer* v. *Poucher*, which is also before us, involving the same question, have been so fully and ably examined by the learned judge who delivered the opinions of the supreme court, that I shall not go very fully into the discussion of the principle to be settled.

I shall assume, without however intending to intimate any opinion on the point, that the plaintiff is right in saying, that the trustees took the legal estate for the life of Mathias, the grandson of the testator; and that he had only an equitable life estate.

. It was not suggested, nor am I aware that the act to abolish entails, passed in 1782, can have any material influence upon the case, and I shall therefore leave it entirely out of view.

Dirk, the oldest son of Mathias the grandson of the testator, was born in 1783, and died in 1809; both events having happened while the life estate was running; which did not terminate until 1825.   On the birth of Dirk, his remainder, which was before contingent, became vested in interest, and he was seized of an estate tail in remainder.   Although he neither had possession, nor the right to immediate possession, he had a fixed right of future enjoyment the moment the life estate should come to an end.   Such was the state of the case at the time the act of 1786 was passed; and the question is, whether the act took effect upon an estate tail, under such circumstances, as well as upon an estate tail where the tenant in tail was seized in fact, or had actual possession.   I think it did.

When the legislature was about to abrogate the right of primogeniture, and make other reforms in the law of descents, they found estates tail standing in the way of the new rules which they proposed to establish; and they began the work by abolishing those estates.   They did not however annihilate the title to the property, but only changed the nature or quality of the estate, so that it would go to the heirs general of the

tenant in tail, instead of the particular heirs designated by the donor. This was, I think, the leading object which the legislature had in view, though the provision which they made served the further purpose of getting rid of the necessity for fines and recoveries as a means of docking the entail. The estate tail was turned into a fee simple. Then the tenant in tail, having by force of the statute become tenant in fee simple, and having acquired the estate by purchase, would constitute a new stock of descent, from whom the lands might go according to the law of descents, instead of following the form of the gift in tail.

There was the same reason for attacking the estate tail when the tenant in tail was only seized in law, as there was when he was seized in fact; and there was no stronger reason against doing it in the one case, than there was in the other. And on looking at the statute it will be seen that the legislature did not deal with the subject by the halves, but made clean work of it. The title is "an act to *abolish entails*, to confirm conveyances by tenants in tail, to *regulate descents*," &c.; and the first words of the first section are, "that all estates tail shall be, and are hereby abolished." This sweeping declaration was made by men who well understood the force of language, and the nature of the subject with which they had to deal; and it can indicate nothing less than the purpose of reaching all estates tail, without exception. They were acting in accordance with the spirit of the times; and there was no reason in the nature of things why they should not cover the whole ground. Whatever room for doubt there might have been about the true construction of the remaining part of the section, had it stood alone, that doubt must be removed by the language with which the section begins. That furnishes a key to the intention of the framers of the law which cannot be mistaken. If we omit some words which are not material to the present inquiry, and look only at that branch of the section which relates to estates tail then existing, the provision is, "that all estates tail shall be, and are hereby abolished; and that in all cases where any person now is seized in fee tail of any lands, tenements or here

Wendell *v.* Crandall.

ditaments, such person shall be deemed to be seized of the same in fee simple absolute." (3 *R. S. App.* 48.) The same broad language with which the section begins is continued through the clause. It is a provision concerning "all estates tail," and "all cases" where a person is seized of such an estate; and I cannot doubt that the legislature intended to dispose of the whole subject. They meant to reach an estate tail in remainder, as well as one in possession.

It is true that the statute speaks of a person seized of *lands, tenements or hereditaments;* and, in general, seisin of lands means actual possession of them. But taken in their connection, the words evidently mean, seisin of an *estate* in lands. The legislature began by speaking of *estates* tail: that was the subject in hand: those estates were to be turned into estates of a different tenure or quality; and the lawmakers must be understood as speaking of the same thing in the latter part of the clause which they had mentioned at the first. As I read the statute the provision is, that all *estates* tail shall be abolished; and where any person now is seized *of an estate* in fee tail in any lands, &c. such person shall be deemed to be seized of the same, (to wit, an estate in the lands) in fee simple. The third section, which regulates descents, like the first, which abolishes entails, speaks of a person seized of lands, tenements or hereditaments; and I think the word "seized" was used in the same sense in both sections. One who has a vested remainder in fee simple, expectant on the determination of a present freehold estate, has such a seizin in law, when the estate was acquired by purchase, as will constitute him a *stirps* or stock of descent under the third section; and the person who has a vested remainder in fee tail, acquired in the same way, has such a seizin in law as brings his case within the operation of the first section. His remainder in fee tail is turned into a remainder in fee simple. The first section brings the case under the influence of the third; and the estate no longer follows the will of the donor, but is governed by the general law of descents.

Some stress has been laid on the word "fee." As Dirk was

not entitled to the possession so long as the life estate continued, and consequently had not the entire interest, it is said that he had no fee, and that his interest could not be turned into a fee simple.     This argument assumes that the legislature employed the words "fee tail" and "fee simple" to measure the *quantum* of estate: .but I think the words were used to mark the kind or quality, rather than the quantity of the estate.    The word "fee" was originally used in contradistinction to *allodium*, and signified that which was held of another, on condition of rendering him service.    It related to the quality, and not the quantity of the estate.    And although the word is now generally employed to express the *quantum* of estate, that is not its only meaning.    In framing this law, the legislature was not concerned about the right to present enjoyment, but was regulating the course which the estate should take in future.    The purpose was, to impress a new character or quality upon the estate, so that it would no longer follow the will of the donor, but the law of descents; and to that end, the estate in fee tail was converted into an estate in fee simple.

If this had been such a case as was put by way of argument by the counsel for the plaintiff in error in *Van Rensselaer* v. *Poucher*, to wit, if Dirk had been old enough for that purpose, and had died, leaving a son, before the act was passed, then, as the son would take by descent, he would not have such a seisin as would enable him to transmit the estate by descent, before he had exercised some act of ownership over it which the law would regard as equivalent to actual seizin; and it may be that his estate tail would not have changed its character until the determination of the life estate.    Assuming such to be the law, it only proves that there might by possibility have been a case, though the thing was improbable, where the statute would not have had an immediate effect upon the estate tail.    It proves nothing against giving full scope to the broad language and obvious policy of the statute, so far as it can be done consistently with the rules of law; and it may be done in this case.    Dirk took the estate *per formam doni* from the testator, and not by descent from his father Mathias.    He took as a purchaser, and

had a sufficient seizin to cast a descent. There was no good reason why the statute should not have immediate operation upon his estate, as well as upon estates in possession; and I think his remainder in fee tail was converted into a remainder in fee simple.

It is proper to add, that after this judgment had been rendered, and a majority of the judges of the supreme court had been changed, the question came again before that court in *Van Rensselaer* v. *Poucher*, and upon full consideration was again decided the same way. And a like decision was made in May, 1846, by the circuit court of the United States for the southern district of this state, in the case of *Van Rensselaer* v. *Kearney and others*. I have the authority of both the learned judges of that court for saying, that the decision of the supreme court was not treated as a controlling authority; but the question was examined and decided in conformity to the opinion which the judges of the circuit court entertained of the law applicable to the case.

The question is certainly not free from difficulty; but upon the best consideration which I have been able to give to it, I am of opinion that the judgment of the supreme court is right; and such is the opinion of the court.

Judgment affirmed.