**INDEPENDENT BANKERS ASSOCIATION OF AMERICA, a corporation,**

v.

**John G. HEIMANN, Comptroller of the Currency of the United States Department of Treasury, Appellant.**

**No. 79–1696.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1980.

Decided June 11, 1980.

L. Robert Griffin, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Alice Daniel, Acting Asst. Atty. Gen., and Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, were on brief, for appellant. Ronald R. Glancz, Atty., U. S. Dept. of Justice, Washington, D. C., also entered an appearance for appellant.

Leonard J. Rubin, Washington, D. C., with whom Meyer Eisenberg, Christine E. Carnavos, Washington, D. C., and Horace R. Hansen, St. Paul, Minn., were on brief, for appellee.

James F. Bell and Arthur E. Wilmarth, Jr., Washington, D. C., were on brief for amicus curiae Conference of State Bank Supervisors, urging affirmance.

Arnold M. Lerman, Michael S. Helfer, and Edward Tynes Hand, Washington, D. C., were on brief for amici curiae Bank of America National Trust & Savings Association, et al., urging reversal.

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

Before TAMM and ROBB, Circuit Judges, and GESELL,* United States District Judge for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

The Independent Bankers Association of America (IBAA), a trade association of federal- and state-chartered banks, challenges an interpretive ruling issued by the Comptroller of the Currency that declares loan production offices (LPO's) engaging in certain limited activities not to be "branches" within the meaning of 12 U.S.C. § 36(f) (1976). On IBAA's motion for summary judgment, the United States District Court for the District of Columbia entered an order declaring the Comptroller's ruling to be incorrect and ordering him to rescind the ruling and to refrain from further implementation of it. The Comptroller now appeals. We conclude that IBAA's claim is barred by laches. We therefore reverse the district court's order and remand the case with instructions that the order be vacated and the case dismissed.

Under federal law, national banks may open branches only in accordance with state branching statutes. 12 U.S.C. § 36(c) (1976). Federal law defines a branch "to include any branch bank, branch office, branch agency, additional office, or any branch place of business . . . at which deposits are received, or checks paid, or *money lent.*" *Id.* § 36(f) (emphasis added). In 1966, as part of an operating manual, and again in 1971, as part of the Code of Federal Regulations, the Comptroller of the Currency issued an interpretive ruling concerning the application of this language to LPO's:

Origination of loans by employees or agents of a national bank or of a subsidiary corporation at locations other than the main office or a branch office of the bank does not violate 12 U.S.C. §§ 36 and 81: *Provided,* That the loans are approved and made at the main office or a branch office of the bank or at an office of the subsidiary located on the premises

of, or contiguous to, the main office or branch office of the bank.

12 C.F.R. § 7.7380(b) (1979) (rescinded 1979 pursuant to district court's order in this case). By excluding LPO's falling within this language from the definition of a branch, the ruling permits national banks to open LPO's without having to comply with otherwise applicable requirements of state branching laws. IBAA argues that because LPO's are places where "money [is] lent," they are branches under 12 U.S.C. § 36(f); the Comptroller's ruling, therefore, has allowed national-bank LPO's that do not conform to state branching laws to flourish in violation of 12 U.S.C. § 36(c). The rise of these allegedly unlawful LPO's, IBAA contends, gives their parent national banks a competitive advantage over state-chartered IBAA members, which may open similar facilities only in accordance with applicable state banking laws and regulations.

■ As noted above, the Comptroller first promulgated this ruling in 1966. IBAA did not file this action until 1978. The venerable maxim *vigilantibus non dormientibus aequitas subvenit* (equity aids the vigilant, not those who slumber on their rights) requires that a suit in equity, though otherwise meritorious, be dismissed if two requirements are met: (1) unreasonable delay in bringing the claim for relief and (2) prejudice caused by that delay. *E.g.*, H. McClintock, Handbook of the Principles of Equity § 28, at 71 (2d ed. 1948); 2 Pomeroy's Equity Jurisprudence § 419d (5th ed. S. Symons 1941). These two elements clearly are present in the case before us, and the district court abused its discretion in not ruling that laches barred IBAA's request for relief.

First, IBAA waited twelve years before commencing this action. It had standing to do so, if not immediately on the Comptrol-

ler's issuance of the ruling, then certainly by the early 1970's, when IBAA members began to feel competition from allegedly unlawful LPO's. A number of years passed between that point and the date the action was filed. Some delay might be understandable had the plaintiff been a single bank isolated from the country's financial centers: it might have been unaware of the effect this ruling someday could have on its business. IBAA, however, is a trade association, quite likely to be familiar with trends in the banking industry, including sophisticated loan production techniques, and charged by its members with anticipating the impact of government rulings in the banking area.

■ Second, during the period IBAA delayed, some national banks made substantial financial commitments in opening LPO's that meet the ruling's requirements. Even assuming *arguendo* that these LPO's actually are "branches" under 12 U.S.C. § 36(f) and thus are subject to any state laws that might apply, IBAA could have prevented a large part of the banks' investment in such facilities simply by having brought this action earlier. Closing these LPO's now would force their parent banks to recoup their losses, if at all, through increased charges to customers, a result hardly in line with the public interest. Equity will not protect a party that through years of silence has created an impression of acquiescence that has led others to make substantial financial commitments.

Because IBAA's claim was barred by laches, we believe the district court should have denied relief. We therefore reverse the district court's judgment and remand the case with directions that it vacate its order and dismiss the complaint.**

*It is so ordered.*

---

** In deciding this case on laches, we do not mean to endorse the district court's resolution of IBAA's claims on the merits. On the contrary, we have serious questions about the result. IBAA and the district court posited a hypothetical LPO that engages in all kinds of loan-related activities short of actually approving loans and disbursing funds. *See IBAA v.*

*Heimann*, Civ. No. 78–0811, slip op. at 4 (D.D.C. Mar. 29, 1979) (memorandum opinion), *reprinted in* Joint Appendix (J.A.) at 239, 242; J.A. at 7 (IBAA's complaint). The ruling itself speaks only in terms of "origination." Moreover, evidence in the record indicates that the Comptroller has construed the ruling narrowly in letters sent to banks subject to his jurisdic-

tion. These letters have permitted only interviewing, counseling, and assisting applicants on loan rates and terms; they expressly have forbidden executing notes and security agreements, making forms available for opening checking or savings accounts, counseling customers on other banking services, supplying existing customers with information on their deposit accounts, disbursing loan funds, and accepting loan payments. *Id.* at 193–207. LPO's that do everything except approve loans and disburse funds thus are "branches" even under the challenged ruling as it has been applied.

Because we dispose of this case on the ground that IBAA, as an organization, was guilty of laches, we do not believe that we in any way are hindering individual banks, even if IBAA members, from seeking redress with the Comptroller or, if necessary, the courts should the banks be faced with competition from LPO's that actually are "branches" under 12 U.S.C. § 36(f) and have been opened without satisfying state banking laws, thus violating 12 U.S.C. § 36(c). Whether a particular LPO is permissible under the ruling will be for the Comptroller to decide when the question is presented to him.