**ROBINS ISLAND PRESERVATION FUND, INC., Plaintiff,**

v.

**SOUTHOLD DEVELOPMENT CORP., Defendant.**

**SOUTHOLD DEVELOPMENT CORP., Third–Party Plaintiff,**

v.

**STATE OF NEW YORK, Third–Party Defendant.**

No. CV 89–1299.

United States District Court, E.D. New York.

Feb. 1, 1991.

Bertram E. Hirsch, Floral Park, N.Y., for plaintiff.

Kirschenbaum & Kirschenbaum, P.C. by Samuel Kirschenbaum, Garden City, N.Y., for defendant and third-party plaintiff.

Robert Abrams, N.Y. State Atty. Gen., by John J. Pickett, Albany, N.Y., for third-party defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, Robins Island Preservation Fund, Inc. ("plaintiff") seeks, *inter alia*, a declaration regarding ownership interest and possessory rights in Robins Island, an island of approximately 445 acres located in the Peconic Bay in Suffolk County, New York. Briefly stated, plaintiff's claim is premised on the argument that New York State, in violation of certain national treaties, improperly confiscated Robins Island in 1779 from plaintiff's alleged predecessors-in-interest. Plaintiff, a not-for-profit Delaware corporation with its principal place of business in Maryland, thus claims present ownership to more than seventy percent of Robins Island. Named as defendant is Southold Development Corporation ("defendant"), a New York corporation which currently holds title to Robins Island. In addition, a third-party complaint naming the State of New York, ("the State"), has been filed in the action. Currently before the Court are defendant's and plaintiff's cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. In addition, defendant alternatively seeks dismissal, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, for failure to join necessary and indispensable parties. The State, as third-party defendant, also moves for various relief, including *inter alia*, dismissal of the complaint and summary judgment. After a brief statement of the relevant background facts, the Court will turn to address the parties' motions, beginning with the motions for summary judgment made by defendant and the State.

## I. BACKGROUND

According to the complaint, one Joseph Wickham purchased Robins Island in 1715. In 1734, he devised the property to his son Joseph "and to the male heirs of his body lawfully begotten or to be begotten forever." Complaint at para. 9. Such a devise created an "estate tail" in Robins Island whereby Joseph Wickham II held the fee interest in the property for his life, and upon his death the fee interest would belong to his eldest son. In other words, from generation to generation, Robins Island would be perpetually inherited by the eldest son in direct descent from Joseph Wickham, Sr. In fact, upon the death of Joseph Wickham II in 1749, his eldest son,

Parker Wickham, obtained the estate tail interest in Robins Island.

On October 22, 1779, at a time during the Revolutionary War when British forces occupied Long Island, the State of New York passed the Act of Attainder. That act declared Parker Wickham, among others, convicted of treason, and further declared that all property owned by those named was forfeited to, and vested in, the people of the State of New York. Prior to the confiscation, as noted above, Parker Wickham possessed a "fee tail" estate to various holdings in Suffolk County, including Robins Island. Plaintiff contests the validity of the State's confiscation of Robins Island in 1779, and argues that in any event the 1779 Act of Attainder did not affect any estate or interest held by Parker Wickham's eldest son at the time. *See* Complaint at para. 13. More particularly, as to the former point, plaintiff argues that at the time of the State's 1779 Attainder Act, ("the Attainder"), British forces occupied and maintained control over New York City and Long Island. *See* Plaintiff's Memo at 5. Consequently, plaintiff asserts that New York exercised no sovereignty over Long Island during the period, and therefore state law had no force or effect. *Id.* As to the latter point noted above, plaintiff argues that even if the Attainder was valid to confiscate Robins Island, the future possessory interest of Parker Wickham's son remained valid because the Attainder only sought to confiscate the interest of the individuals specifically named in the statute.

Many of the historical facts are not in dispute, although there is strong disagreement between the parties as to their interpretation. At any rate, in 1782, New York State abolished fee tail estate interests in land, and upon enactment of that same legislation, converted those estates to fee simple estates. In addition, in late 1782 the United States entered into a Provisional Treaty of Peace with Great Britain, ("the 1783 Treaty"), which was executed in 1783. According to the complaint, a portion of the 1783 Treaty was intended to restore all confiscated "Estates, Rights and Properties" to, *inter alia*, "real British subjects."

Plaintiff further points out that Article V of the 1783 Treaty provided that persons with any interest in confiscated lands "shall meet with no lawful impediment in the prosecution of their just rights." Complaint at para. 16. Furthermore, Article VI of the Treaty prohibited future confiscations of property. *Id.*

In May of 1784, the legislature of the State of New York passed an Act for the speedy sale of confiscated estates, which confirmed the confiscations authorized by the Attainder and provided procedures for expediting the sale of those confiscated estates. Thereafter, in August of 1784, the Commissioners of Forfeiture of the State of New York conveyed Robins Island in fee simple to Benjamin Tallmedge and Caleb Brewster. *See* Plaintiff's Affirmation at exhibit 2. According to the complaint, defendant in the action at bar holds title to Robins Island based on a chain of title which commenced with that 1784 conveyance.

As noted above, one of plaintiff's theories is based upon the argument that New York exercised no sovereignty over Long Island at the time of the Attainder, and thus it had no lawful effect over the area. The crux of plaintiff's alternative theory, based on, *inter alia*, clauses cited above from the 1783 Treaty, as well as identical language drafted into the final Definitive Treaty of Peace with Great Britain, is that the 1784 conveyance of Robins Island by the state was void. More specifically, plaintiff argues that the Attainder confiscated a mere life interest held by Parker Wickham. Thus, plaintiff claims that Parker Wickham's son *retained* his vested possessory fee tail estate as of the time of the confiscation. Furthermore, plaintiff asserts that because New York had abolished fee tails in the interim, when Parker Wickham died in 1785 his son held the exclusive right to the fee simple of Robins Island. As alleged successors-in-interest to Parker Wickham's son, plaintiff claims the right to current possession of Robins Island.

By way of clarification, plaintiff is a corporation which apparently has obtained quit claim deeds from various individuals

who claim to be heirs of Parker Wickham. All told, the collection of alleged interests is asserted to comprise an approximate 75% undivided interest in Robins Island. Plaintiff thereby seeks a declaration that it is the owner of its claimed interest, and seeks, *inter alia*, that this Court grant it immediate possession, in addition to an award of fair rental value during the period of defendant's use and occupancy of Robins Island.

In response to the complaint, defendant points out that title to Robins Island has remained stable for over two hundred years, and that plaintiff's action destabilizes the title to all land formerly owned by Parker Wickham, including parts of the Towns of Southold, Riverhead and Southampton, New York. Among the affirmative defenses asserted by defendant are, *inter alia:* (1) that plaintiff has failed to name indispensable parties; (2) that the action is barred by the statute of limitations; and (3) that through adverse possession title has been acquired by defendant and its predecessors. As noted above, plaintiff and defendant move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. In addition to defendant's Rule 56 motion, which seeks dismissal of the complaint, the State moves for various alternative relief, including dismissal of the complaint, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, and summary judgment. Aside from asserting the statute of limitations as a time bar, a defense also raised by defendant, the State additionally asserts that plaintiff's causes of action are barred by the doctrine of laches.

## II. DISCUSSION

Given the unique nature of this case, and the lengthy arguments made by the parties in their papers, the Court will address only the issues which it considers to be dispositive of the motions. Accordingly, for the reasons set forth below, the Court finds that defendant's and the State's motions for summary judgment must be granted. By way of an outline, the Court will address the following points in the following sequence: (A) New York's Act of Attainder

of 1779 was validly exercised over Parker Wickham, and at the time New York conveyed Robins Island in 1784, it held a fee simple absolute interest in the premises; therefore, the Court finds that plaintiff has no claim under the 1783 Treaty, and that there is no federal question jurisdiction over this case. (B) Pursuant to the Court's diversity jurisdiction, the substantive law of New York would apply, and therefore, based on both Supreme Court precedent and New York law, the Attainder was valid. However, even if the Court were to find that the Act of Attainder was not valid, application of the state statute of limitations would bar plaintiff's claim. (C) Even assuming, *arguendo*, that Joseph Wickham did retain some future interest in Robins Island, the equitable doctrine of laches bars plaintiff's claim. Moreover, even if the Court were to find that application of a state-law time bar was inappropriate, public policy demands that plaintiff's claim cannot exist in perpetuity and unsettle title to real property in New York.

For each of the points made below, the Court emphasizes that the summary judgment standard of Rule 56(c) of the Federal Rules of Civil Procedure controls. Accordingly, it is to be noted that a motion for summary judgment may be granted only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987); *Winant v. Carefree Pools*, 709 F.Supp. 57, 59 (E.D.N.Y.), *aff'd*, 891 F.2d 278 (2d Cir. 1989). The burden on such a motion is upon the moving party to clearly establish the absence of a genuine issue as to any material fact. *Donahue*, 834 F.2d at 57. In addition, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Id.* With these principles in mind, the Court notes that many of the factual issues raised by the parties herein involve questions regarding the interpretation of both

historical documents and historical events. Therefore, in light of the fact that this case poses a number of mixed issues of law and fact, albeit ancient fact, and given that no one involved in this case has any personal knowledge of the great majority of the facts, the Court views this case as one particularly well-suited to disposition by motions. Consequently, in consideration of all the documentation submitted by the parties, the Court finds as follows.

## A. Validity of New York's Act of Attainder

■ As noted above, plaintiff asserts that the Attainder had no lawful effect on Parker Wickham's interest in Robins Island, since the British forces allegedly occupied the Long Island area at the time of the Attainder. *See* Plaintiff's Memo. at 4–6. However, the cases relied upon by plaintiff to support this proposition are far outweighed by the Supreme Court cases cited by defendant and the State, which stand for the proposition that an act taken by a state after July of 1776 was an act taken by a sovereign and independent government. *Ware v. Hylton*, 3 U.S. (3 Dall.) 199, 224–25, 1 L.Ed. 568 (1796); *M'Ilvaine v. Coxe's Lessee*, 8 U.S. (4 Cranch) 209, 212, 2 L.Ed. 598 (1808). It is of particular significance that the court in *Ware* upheld a Virginia forfeiture statute, adopted prior to the Articles of Confederation, which confiscated certain British property within Virginia. *See* 3 U.S. (3 Dall.) at 222, 225.

In addition to the United States Supreme Court precedent noted above, the State cites, *inter alia*, *McGregor v. Comstock*, 16 Barb. 427 (1853), *aff'd*, 17 N.Y. 162 (1858), to support the proposition that the courts of New York have consistently upheld the various provisions of the Attainder. *See* New York State's Memo. in Opposition at 3–6, 8, and cases cited therein. Plaintiff does not sufficiently raise a genuine issue so as to dissuade this Court from the belief that *McGregor* illustrates that

New York courts have upheld the validity of the Attainder. *See McGregor*, 16 Barb. at 434.

Plaintiff's reliance on *United States v. Curtiss–Wright Corp.*, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936) is misplaced. In *Curtiss–Wright* the court held that, both prior to and following the Declaration of Independence, the individual states "never possessed *international* powers," and thereby specifically addressed the limited power of the individual states as respecting foreign affairs. *Id.* at 316, 57 S.Ct. at 219 (emphasis added). Such a ruling does nothing to impact the earlier Supreme Court precedent which clearly held that the states, after the adoption of their respective constitutions and before the ratification of the United States Constitution,[1] had the sovereignty and authority to create such laws as effected property within their bounds. *Ware*, 3 U.S. (3 Dall.) at 223–24. Therefore, in spite of the British occupation, this Court finds that New York's Act of Attainder in 1779 was valid as respecting Robins Island. *See id.*

In addition, plaintiff's reliance on *United States v. Rice*, 17 U.S. (4 Wheat.) 246, 4 L.Ed. 562 (1819), is of no avail. In *Rice*, the Court held that goods imported in 1814 to a British-controlled port in Maine, during the hostilities of the War of 1812, could not subsequently be made liable for taxes pursuant to the United States revenue laws. *Id.* at 253. However, *Rice* dealt with the imposition of a federally created tax on goods, and cannot be logically extended to support the proposition that a *state* could not legislate valid laws governing property within its borders during a period of occupation. In fact, no case cited by plaintiff directly held New York's 1779 Act of Attainder to have been unlawful.

*Harden v. Fisher*, 14 U.S. (1 Wheat.) 300, 4 L.Ed. 96 (1816), cited by both parties, dealt with issues regarding the Attainder, but ultimately approved of the confiscation of property, and never found the Attainder to have been illegal or improper. In addi-

---

**1.** It is to be noted that New York State's Constitution was enacted in 1777, *prior* to the 1779 Act of Attainder.

tion, neither *Inglis v. The Trustees of the Sailor's Snug Harbor*, 28 U.S. (3 Pet.) 99, 7 L.Ed. 617 (1830), nor *Carver v. Jackson*, 29 U.S. (4 Pet.) 1, 7 L.Ed. 761 (1830) found the Attainder to be invalid. Rather, as noted above, Supreme Court precedent supports the proposition that the Attainder was valid.

This Court further notes that the 1783 Treaty of Peace itself appears to have recognized the valid confiscation of property, owned by either British subjects or loyalists, by the individual states, regardless of whether a region was controlled by the British. Indeed, Article V of the 1783 Treaty specifically provided that:

> It is agreed that the Congress shall earnestly recommend it to the Legislatures of the respective States, to provide for the Restitution of all Estates, Rights, and Properties which have been confiscated, belonging to real British Subjects; and also of the Estates, Rights and Properties of Persons resident in Districts in the Possession of his Majesty's Arms....

Treaty of Peace, Nov. 30, 1782—August 6, 1783, United States—Great Britain, at Article V. Therefore, the very Treaty which plaintiff argues was violated by the confiscation and subsequent sale of Robins Island acknowledged the authority of the states to confiscate property, and merely recommended to the states that restitution be provided. *See also Orr v. Hodgson*, 17 U.S. (4 Wheat.) 453, 463, 4 L.Ed. 613 (1819).

■ Having established the absence of a genuine issue of fact as to the validity of the Attainder, the next issue to be addressed concerns the circumstances of the sale of Robins Island by the State to Benjamin Tallmedge and Caleb Brewster in 1784. Plaintiff argues that even where the Attainder validly confiscated Parker Wickham's interest, Parker Wickham's son Joseph retained a future interest which was allegedly unaffected by the Attainder. However, based on the submissions of the parties, this Court disagrees.

As discussed above, in 1779 New York's Act of Attainder confiscated Parker Wickham's interest in Robins Island. The next relevant event, which is apparently undisputed by the parties, was New York's abolishment of the fee tail interest in real property. It bears repeating to note that Parker Wickham's interest in Robins Island at the time of the Attainder was a fee tail. *See supra* page 1186. It is plaintiff's contention that the Attainder was limited in scope to Parker Wickham, and that therefore any further interest held by another party was not destroyed by the confiscation. *See* Plaintiff's Memo at 17–21. Thus, plaintiff asserts that when Parker Wickham died in 1785, his son Joseph Wickham became vested with a fee simple interest. *Id.* at 13. According to plaintiff, any other interpretation would be violative of the prohibition against "future confiscations" in the 1783 Treaty of Peace. Although defendant argues that, pursuant to the Attainder legislation, the people of the State of New York were seized with a fee simple absolute estate in Robins Island, *see* Defendant's Memo. in Opposition at 16, even if the Attainder only confiscated the "fee tail" estate of Parker Wickham, for the reasons stated below any possible interest of Joseph Wickham was ultimately extinguished.

In 1782, after New York confiscated the property, it enacted legislation which abolished fee tail estates, and simultaneously converted them to fee simple estates. Act of July 12, 1782, N.Y.Laws, 6 Sess., ch. 2 (reproduced at *id.*, exhibit 2). As plaintiff apparently concedes, the 1782 Act made no provision for any future possessory interests, and it would defeat the purpose of the legislation to find anything other than that future interests under the fee tails were extinguished. Thus, it appears to this Court that New York, which had confiscated Robins Island pursuant to the Attainder, and thereby held ownership to Robins Island at the time of the 1782 Act, became vested with a fee simple estate. Consequently, when New York later sold the property in 1784, it conveyed a fee simple absolute interest. It is to be noted that Parker Wickham died in 1785, and although plaintiff argues that Joseph Wickham was entitled to the property at that point, based on the chronology of the various legislation

this Court agrees with the State that Joseph Wickham's interest was extinguished by the law abolishing fee tails. *See* New York State Memo in Opposition at 10. As the State points out, plaintiff's reliance on the New York case of *Wendell v. Crandall*, 1 N.Y. 491 (1848), is misplaced since that case involved the interpretation of a later statute.[2]

Overall, in consideration of the papers and authorities submitted by the parties, the Court finds that there does not exist a genuine issue of material fact as to the validity of the Attainder and the subsequent sale of Robins Island to Tallmedge and Brewster in 1784. *See* Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. In addition, as noted above, plaintiff's argument that the 1784 sale violated the provision of the 1783 Treaty of Peace which forbade "future confiscations," is rejected since Joseph Wickham's interest was extinguished, at the latest, by the time of the 1782 Act abolishing fee tails. *See* Act of July 12, 1782, N.Y.Laws, 6 Sess., ch. 2 (wherein tenants holding title in a fee tail estate were deemed to hold in fee simple). Thus, based on the above reasons the Court finds that plaintiff's claim is without merit. Having made such a determination, it is to be noted that plaintiff does not overcome defendant's reliance on the assertion by the United States Department of State that the provisions in Articles 4–7 and 10 of the 1783 Treaty have expired, and are of no force and effect. *See* Defendant's Memo. at 9–10. However, as explained below, even if the Court were to find merit in the claim, New York's statute of limitations renders the action time-barred.

## B. *Statute of Limitations*

■ The Supreme Court has established that where Congress has not provided a federal statute of limitations governing an action, federal courts must apply the most appropriate state statute of limitations. *Johnson v. Railway Express Agency, Inc.,*

421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) (citations omitted); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 1254–55, 53 L.Ed.2d 402 (1977) (citations omitted); *see also County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 240–41, 105 S.Ct. 1245, 1254–55, 84 L.Ed.2d 169 (1984). Plaintiff argues that application of a state law statute of limitations in this case would be violative of the 1783 Treaty of Peace, and thereby violative of the Supremacy Clause in the United States Constitution. U.S. Const. art. VI, cl. 2. However, such an argument presupposes that the 1783 Treaty itself contemplated eternal preservation of land claims by parties who are neither British subjects, nor individuals personally seized of any real property interest within their lifetime. For the reasons stated below, the Court finds that plaintiff's is an untenable position.

Plaintiff asserts that its claim is a treaty-based one, and therefore not subject to time bar defenses. *See* Plaintiff's Memo. at 33–39. However, as discussed above, plaintiff has no direct cause of action based on New York State's violation of the 1783 Treaty of Peace. Since plaintiff additionally pleads diversity jurisdiction pursuant to 28 U.S.C. § 1332, and since this case is wholly concerned with title to real property in New York State, *see e.g.,* *El Cid Ltd. v. New Jersey Zinc Co.*, 575 F.Supp. 1513 (S.D.N.Y.1983), *aff'd*, 770 F.2d 157 (2d Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 573, 88 L.Ed.2d 557 (1985), this Court finds that application of New York law regarding the state statute of limitations is proper.

Firstly, it is not the Court's view that the 1783 Treaty of Peace contemplated a scenario such as the one presented in the case at bar. Although the Treaty did provide that persons with an interest in any confiscated lands would "meet with no lawful Impediment" in pursuing their claims, in this instance the lawful impediment is not being asserted against Joseph Wickham, or any other "British Subjects" in the words of the Treaty, but against a Delaware cor-

---

**2.** Plaintiff does not contest that the later statute of 1786 utilized in the *Wendell* case actually provided that conveyances made pursuant to

the 1782 Act would remain in effect. *See* New York State Memo in Opposition at 11.

poration 207 years later. A reasonable interpretation of the "no lawful impediments" phrase would not support the theory that the drafters of the Treaty actually intended that a claimed heir or assignee would remain immune from the countless other state laws which have been enacted, and therefore the Court finds that application of the New York statute of limitations is appropriate.

Secondly, the Court finds plaintiff's reliance on *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1984), to be misplaced. In *Oneida*, the Supreme Court rejected application of a statute of limitations defense to Indian land claims which accrued in 1795. *Id.* at 240–41, 105 S.Ct. at 1254–55. However, the *Oneida* court repeatedly emphasized the special nature of Indian claims, and noted that the Court had always "recognized the aboriginal rights of the Indians to their lands." *Id.* at 235, 105 S.Ct. at 1251. Moreover, the Court discussed in detail the unique federal jurisprudence which had developed with respect to Indian claims since prior to the Revolutionary War, *id.* at 233–36, 105 S.Ct. at 1250–52, and, in acknowledging Congressional intent and judicial precedent, ruled that the Oneidas cause of action was based on federal common law. *Id.* at 236, 105 S.Ct. at 1252. Moreover, federal statutes which specifically addressed actions brought by Indians with respect to property further supported the Court's decision. *Id.* at 240–44, 105 S.Ct. at 1254–56. Thus, the Court found that "the borrowing of a statute of limitations period in these cases would be inconsistent with federal policy." *Id.* at 241, 105 S.Ct. at 1255.[3] With respect to the case at bar, plaintiff has shown no established federal policy, under judicial precedent or Congressional intent, which would call for a similar result. Accordingly, *Oneida* is of no avail to plaintiff. *See generally*, New York State Memo in Opposition at 8–9.

In addition, plaintiff's reliance on *Karnuth v. United States*, 279 U.S. 231, 49 S.Ct. 274, 73 L.Ed. 677 (1929) is misplaced. *Karnuth* does not stand for the proposition that there can be no statute of limitations imposed on actions allegedly arising out of the Treaty of Peace, nor does *Society for the Propagation of the Gospel v. New Haven*, 21 U.S. (8 Wheat.) 464, 5 L.Ed. 662 (1823). The facts of the *Society* case, aside from the fact that they were being addressed within thirty years of the date of the confiscation, arose out of a confiscation of British-owned property which took place in 1794, eleven years *after* the Treaty of Peace prohibited "future confiscations." *Id.* at 490. In short, no cases cited by plaintiff persuade this Court that a time-bar cannot be applied to this action, were it even established that a valid cause of action existed.

■ That being the case, defendant urges that the appropriate analogous cause of action under state law from which to discern the proper limitation is found in Article 15 of the New York State Real Property Actions and Proceedings Law, ("RPAPL"). N.Y. Real Prop. Acts § 1501 *et seq.* (McKinney 1979). That statute provides for an action to compel the determination of a claim to real property. *Id.* It has been held that actions brought pursuant to Article 15 of the RPAPL are subject to a ten-year statute of limitations. *See* N.Y.Civ.Prac.L. & R. § 212(a) (McKinney 1990); *Downes v. Peluso*, 115 A.D.2d 454, 495 N.Y.S.2d 691, 692 (2d Dep't 1985). On the other hand, the state suggests that the appropriate statute of limitations was provided by the New York legislature in an Act of 1797, which indicated that any person or entity having a claim for land forfeited to the state due to attainder would have five years from the date of March 28, 1797 to bring an action. *See* State of New York's Memo at 3–4. However, even allowing for the greater ten-year period, it re-

---

**3.** It is to be noted that the *Oneida* Court did not squarely address the doctrine of laches as a bar to the claims presented therein, *Oneida,* 470 U.S. at 244–45, 105 S.Ct. at 1256–57, although the majority indicated its belief that laches was inapplicable. *Id.* at n. 16. *But see, id.* at 255–73, 105 S.Ct. at 1262–72 (Stevens, J., dissenting) (supporting the application of a time bar to the claims).

mains inescapably clear that plaintiff's action is time-barred.

■ A federal claim "accrues when the plaintiff 'knows or has reason to know' of the injury that is the basis of his action." *Pauk v. Board of Trustees*, 654 F.2d 856, 869 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). In the case at bar, the *latest* date by which plaintiff may be held to have learned of any possible claim was May 22, 1785, when Parker Wickham died and his son Joseph could have argued a right to possession of Robins Island. *See* New York State's Memo at 6. Plaintiff claims that it is the direct successor-in-interest to Joseph Parker Wickham, and yet even utilizing a liberal approach to the accrual date, the action was brought 194 years too late. Thus, the Court holds that plaintiff's cause of action is barred by the ten-year statute of limitations as provided by New York law. *See Downes*, 495 N.Y.S.2d at 692.

However, even if the Court were to find the statute of limitations inapplicable, the equitable doctrine of laches, combined with and supported by public policy, would bar plaintiff's claim.

## C. *Laches and Public Policy*

■ The state argues that plaintiff's claims are barred by the doctrine of laches. *See* New York State's Memo at 8. Although, as discussed above, plaintiff asserts that there are no time-bar defenses to this action, and that application of such a defense would be violative of both the separation of powers doctrine and the Supremacy Clause, this Court has already determined that application of a statute of limitations is proper and bars plaintiff's claims. However, separate and apart from the statute of limitations, this court finds that plaintiff's claims would be additionally barred by both laches and public policy. *See County of Oneida*, 470 U.S. at 261–73, 105 S.Ct. at 1265–72 (Stevens, J., dissenting) (wherein Justice Stevens offered a detailed explanation of, and approval to, application of the doctrine of laches to ancient land claims); *but see, id.* at 244–45, n. 16, 105 S.Ct. at 1256–57, n. 16 (suggesting that

application of laches to bar *Indian* land claims is inappropriate) (citations omitted).

■ The equitable doctrine of laches focuses on the inquiry of whether the plaintiff, in asserting its rights, was guilty of unreasonable delay which prejudiced the defendant. *See Gardner v. Panama R.R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 13–14, 96 L.Ed. 31 (1951) (citations omitted); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651, 655 (2d Cir.1978); *Indep. Bankers Assoc. v. Heimann*, 627 F.2d 486, 488 (D.C.Cir.1980). Generally, even given a remarkable passage of time such as in the case at bar, "[l]ack of diligence, standing alone, is insufficient to support a claim of laches; the party asserting the claim also must establish that it was prejudiced by the delay." *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir.1985) (citing *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)); *see also* 30A C.J.S. *Equity* § 112 (1955).

In the case at bar, it is undisputed that plaintiff and its predecessor-in-interest have been out of possession of Robins Island, with knowledge of the fact, for over 200 years. It does not appear that there exists, and plaintiff does not offer, any excuse or explanation for the extraordinary delay in bringing this action. Moreover, defendant, along with every prior owner of the parcel, has relied on the time-honored assumption that no valid claims existed on behalf of plaintiff. In fact, plaintiff's inexcusable delay helped form the basis of that assumption, and it is just such a scenario which gives rise to a charge of laches. *See Gardner*, 342 U.S. at 31, 72 S.Ct. at 13; *Costello*, 365 U.S. at 282, 81 S.Ct. at 543; *see also County of Oneida*, 470 U.S. at 256, 105 S.Ct. at 1263 (Stevens, J., dissenting in part).

Plaintiff does not challenge that defendant and its predecessors have paid the taxes and maintained the property for more than 200 years. It does not appear that plaintiff, or its · predecessors-in-interest, commenced any action, or even raised any claim with the State, in that entire time. The approximately 204 year delay in com-

mencing this action, from the 1784 conveyance by the state, now threatens to disrupt title to real estate in various parts of Long Island, aside from Robins Island, which in and of itself can be viewed as supporting a claim of laches. *See County of Oneida,* 470 U.S. at 256, 105 S.Ct. at 1263 (Stevens, J., dissenting) (quoting a passage from *Lewis v. Marshall,* 30 U.S. (5 Pet.) 470, 477–78, 8 L.Ed. 195 (1831), which noted that "[t]he best interests of society require that causes of action should not be deferred an unreasonable time. This remark is peculiarly applicable to land titles."); *see also Lake Caryonah Im. Ass'n v. Pulte Home Corp.,* 903 F.2d 505, 508–09 (7th Cir.1990) (applying laches to bar a land claim where plaintiff's 11 year delay in bringing action caused prejudice by way of, *inter alia,* defendant having paid property taxes and insurance costs and maintained the property). For the same reasons, public policy would further support the application of laches herein.

The Court is mindful of plaintiff's stated purpose. It is worthy of mention that plaintiff asserts that aside from "rectify[ing] an historical injustice committed by the State of New York against Parker Wickham and his family," the present lawsuit is further based on important environmental concerns valued by the Peconic community. *See* Plaintiff's Memo at 1. Furthermore, plaintiff asserts that it decided to take action when it appeared that Robins Island faced impending development by defendant. *Id.* at 1–2. Nevertheless, such goals, which may be seen as admirable, do not come close to justifying what appears to this Court to be an unprecedented period of delay. As Justice Stevens noted, dissenting in part in *County of Oneida:*

> Although the mere passage of time, without other inequity in the prosecution of the claim, does not support a finding of laches in the ordinary case, ... in cases

of *gross* laches the passage of a great length of time creates a nearly insurmountable burden on the plaintiffs do disprove the obvious defense of laches. 470 U.S. at 266, 105 S.Ct. at 1268 (citations, footnote omitted).[4]

From another perspective, the Court rejects plaintiff's assertion that the Treaty of Peace would be violated, or improperly amended, by the imposition of a time-bar to the instant case. From the language of the Treaty itself, it does not appear that drafters intended parties in the position of Joseph Wickham, let alone their descendants, to retain claims in perpetuity. In fact, as discussed above, the Treaty provided that "Congress shall earnestly recommend it to the Legislatures of the respective States, to provide for the Restitution of all Estates, Rights, and Properties which have been confiscated, belonging to real British subjects." *See* Defendant's Notice of Motion at exhibit D. This Court agrees with defendant's assertion that such language, "recommending" restitution of confiscated estates, illustrated a recognition by the creators of the Treaty that attainders were lawfully enacted. In other words, the Treaty itself indicated that the individual states were free to either restore the confiscated estates or not to do so. In fact, as noted above, New York subsequently rejected such a recommendation and passed an act for the speedy sale of the confiscated and forfeited estates. *See* 1784 N.Y. Laws ch. 64 (reproduced at Defendant's Notice of Motion at exhibit F). Therefore, the language of the Treaty itself, along with the subsequent legislation passed by New York State, support a finding that some type of time-bar is demanded, separate and apart from the persuasive public policy basis for doing so.

Lastly, the extended delay of this claim appears to have rendered the proof of any lingering questions of fact impossible. To cite but one example, defendant argues

---

**4.** It is to be noted that the majority in *Oneida,* although suggesting that it would not apply laches to Indian land claims, *see* note 3 *supra,* did not directly address the issue. Furthermore, absent the stated importance and influence of longstanding federal policy regarding

Indian claims, it does not appear that the majority in *Oneida* would have necessarily rejected application of the doctrine of laches in that case. *See* 470 U.S. at 244 n. 16, 105 S.Ct. at 1256–57 n. 16.

that Parker Wickham elected to receive compensation for his claim from the British government, rather than pursue any claim in the courts of the United States. *See* Defendant's Memo at 30. Plaintiff more or less concedes that such an issue of fact now requires speculative arguments due to the passage of time. *See, e.g.,* Plaintiff's Memo at 63–64 (wherein plaintiff suggests that the compensation law "was passed out of moral considerations.") As a matter of equity, such issues cannot now be litigated where there has been an inexcusable and prolonged delay on the part of plaintiff.

For the reasons stated above, the Court holds that the doctrine of laches would act as a bar to all of plaintiff's clams, thus requiring the dismissal of the complaint.

## CONCLUSION

As explained above, this Court finds that plaintiff has no claim based on the argument that New York's 1779 Act of Attainder was invalid as applied to Robins Island; additionally, there is no merit to plaintiff's claim based on its alleged position as successor-in-interest to Joseph Wickham, nor in the argument that the sale of Robins Island in 1784 violated the 1783 Treaty of Peace. To this finding, the plaintiff has not raised a genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. However, even if the Court were to find merit in plaintiff's claims, application of the appropriate statute of limitations would nonetheless render the action time-barred, and as to this issue the Court finds that there is no genuine issue of material fact. *Id.* Moreover, the equitable doctrine of laches would also stand as a time-bar in this case.

Based on these rulings, the Court need not take a position on the further defenses raised by defendant and the State, namely, that plaintiff has failed to join necessary and indispensable parties, pursuant to Rule 19 of the Federal Rules of Civil Procedure, and that the defendant has acquired title to Robins Island based on adverse possession. *See* Defendant's Memo at 28. Rather, for the reasons stated above the Court finds that defendant and the State have carried

their burdens and shown the absence of a genuine issue of material fact sufficient to award them summary judgment. Fed.R. Civ.P. 56(c); *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). Accordingly, plaintiff's motion for summary judgment is denied and defendant's and the State's motions for summary judgment are granted. Consequently, the complaint is dismissed; the Clerk of the Court is directed to close the file in this case.

SO ORDERED.